**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| OWEN F. SILVIOUS,<br><br>               Plaintiff,<br><br>v.<br><br>UNGAR'S FOOD PRODUCTS INC., d/b/a<br>DR PRAEGER'S SENSIBLE FOODS,<br><br>               Defendant. | Civil Case No. 1:11-cv-00539 (RBW) |

## DEFENDANT'S MOTION TO DISMISS AND MOTION FOR THE COURT TO TAKE JUDICIAL NOTICE OF CERTAIN DOCUMENTS

Defendant Ungar's Food Products, Inc., d/b/a Dr. Praeger's Sensible Foods, moves to dismiss this suit for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Defendant further moves this Court to take judicial notice of certain documents submitted herewith pursuant to Fed. R. Evid. 201. In support of these Motions, the Court is respectfully referred to the accompanying Statement of Points and Authorities and exhibits thereto. A Proposed Order consistent with these Motions is also attached hereto.

Dated:  March 17, 2011

                                           Respectfully submitted,

                                           Dechert LLP

                                           /s/ Scott M. Taggart
                                           Scott M. Taggart
                                           D.C. Bar ID No. 988974
                                           1775 I Street, NW
                                           Washington DC 20006
                                           Tel: (202) 261-3393
                                           Fax: (202) 261-3333
                                           Attorneys for Defendant

Of Counsel:

SAIBER LLC
David R. Gross (not yet admitted *pro hac vice*)
James H. Gianninoto (not yet admitted *pro hac vice*)
Una Young Kang (not yet admitted *pro hac vice*)
D.C. Bar ID No. 497833
18 Columbia Turnpike
Suite 200
Florham Park, New Jersey 07932
Tel: (973) 622-3333
Fax: (973) 622-3349

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OWEN F. SILVIOUS,<br><br>                              Plaintiff,<br><br>v.<br><br>UNGAR'S FOOD PRODUCTS INC., d/b/a<br>DR PRAEGER'S SENSIBLE FOODS,<br><br>                              Defendant. | Civil Case No. 1:11-cv-00539 (RBW) |

<u>**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS AND MOTION FOR THE COURT TO TAKE JUDICIAL
NOTICE OF CERTAIN DOCUMENTS**</u>

Pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6), and Federal Rule of

Evidence 201, Defendant Ungar's Food Products, Inc. ("Defendant"), submits this Statement of

Points and Authorities in Support of its Motion to Dismiss the Complaint of Plaintiff Owen F.

Silvious ("Plaintiff" or "Silvious") and its Motion for the Court to take Judicial Notice of Certain

Documents.   Plaintiff's Complaint should be dismissed because: (1) Plaintiff does not have

standing to pursue his claim under the District of Columbia Consumer Protection Procedures Act

("CPPA"); (2) Plaintiff fails to state a claim under the CPPA; (3) Plaintiff cannot bring a suit on

behalf of others as a *pro se* litigant; (4) Plaintiff cannot bring a representative claim under the

CPPA without complying with class action procedures; and (5) interests of comity and judicial

economy – the "first filed rule" require dismissal of this action pursuant to the Court's inherent

powers. Furthermore, this Court should take judicial notice of the attached exhibits.

## PRELIMINARY STATEMENT

This action filed by Plaintiff is simply the latest in a long line of unsuccessful attempts to extract money from Defendant for its alleged violation of the CPPA, without complying with the requirements of Rule 23.  As evident on the face of his Complaint, Plaintiff's attempt to recast, yet again, his allegations to avoid compliance with Rule 23, is belied by the fact that he continues to seek relief for himself and others, and accordingly, should be rejected, yet again. Notwithstanding Plaintiff's efforts to manipulate semantics, the substance of the allegations and nature of the relief sought can only constitute a putative class action.

This District Court has already considered these same issues and dismissed Plaintiff's prior amended complaint in 2010, agreeing with Defendant that Plaintiff could not assert these claims absent compliance with Rule 23's class action procedures (which compliance would, in any event, be impossible because Plaintiff, as a *pro se* litigant, cannot pursue a putative class action on behalf of others).  The Complaint before this Court addresses none of the issues identified by the District Court in 2010 and indeed, reflects not only the same fatal flaws that existed in Plaintiff's prior amended complaint but also contains new flaws (such as Plaintiff's new concession that he did not suffer any personal damages), which again compel dismissal - this time with prejudice.

## BACKGROUND

On February 11, 2011, Plaintiff, Owen F. Silvious ("Plaintiff" or "Silvious") filed a *pro se* complaint against Defendant Ungar's Food Products, Inc. ("Defendant") in the Superior Court of the District of Columbia, Civil Division, captioned *Owen F Silvious v. Ungar's Food Products Inc., d/b/a Dr. Praeger's Sensible Foods*, No. 2011-CA-1215 (the "Complaint"). Defendant timely removed the action to the District Court on March 10, 2011 [Dkt. No. 1].

Pursuant to Rule 81(c)(2), Defendant's Motion to Dismiss is timely, having been filed within 7 days after the filing of the Notice of Removal. Fed. R. Civ. P. 81(c)(2).

The Complaint alleges that Defendant violated Sections 28-3904(a), (d) and (e) of the CPPA by misrepresenting the fat and caloric content of certain of the Defendant's products, namely California Veggie Burgers, Tex-Mex Veggie Burgers, Broccoli Pancakes, Potato Pancakes, and Spinach Pancakes Compl. at ¶¶5-8. Plaintiff alleges that he "purchased the five product's [sic] stated herein in the District of Columbia" although "he only consumed the potato pancakes." *Id*. at ¶2. Plaintiff does not allege any specific facts regarding his alleged purchases, including dates, quantities, stores, or prices paid. Plaintiff further alleges that he is entitled to statutory damages in the amount of at least "$180,000.00 pertaining only to the five products purchased by plaintiff". *Id* at ¶¶18, 20. Yet, Plaintiff claims that he does not have to prove that he was actually misled, deceived or damaged" in order to pursue a CPPA claim. *Id*. at ¶9. In fact, Plaintiff also *concedes* that he "is *not* claiming any personal damages." *Id*. at ¶13 (emphasis added). Instead, Plaintiff asserts that "[h]e is only claiming *statutory* damages as authorized by the Act because defendant violated the Act." *Id*. (emphasis added).

Not only does Silvious seek statutory damages for himself, for alleged "120 violations" of the CPPA, which he claims "mandate a minimum of $1,500.00 per violation for total statutory damages payable to plaintiff [himself] of $180,000.00" (Compl. at ¶8), but he also seeks damages on behalf of other consumers. *Id*. at ¶20. Specifically he alleges that "each time the five products were sold and delivered in the District of Columbia was a violation of the District of Columbia Consumer Protection Procedures Act" and that any damages award should include additional damages on behalf of those third parties "which might be determined through discovery" for all other packages of the Defendant's products sold in the District of Columbia to

other consumers. *Id*. at ¶20.  In fact, Plaintiff alleges that the potential statutory damages for other consumers' purchases of Defendant's products may total $45,000,000.00 or more, assuming that at least "(5,000) packages of the products were purchased by consumers in the District of Columbia." *Id*.  Plaintiff calculates these damages for other consumers' purchases as follows: "6 violations per package x 5,000 packages = 30,000 violations"; "30,000 violations x $1,500.00 per violation equals statutory damages of Forty Five Million Dollars ($45,000,000.00)". *Id*. at ¶¶17-18.  Plaintiff further requests that the Court award "*cy pres*" damages, in addition to what appears to be an award to Plaintiff for bringing this action as a representative plaintiff in this putative class action - a 10% award to Plaintiff "for bringing this action because the above awards will benefit many individuals in the District of Columbia." *Id*. at ¶19.

## The Elias Class Action

Plaintiff's Complaint in this action mirrors the material allegations that form the basis of a class action complaint that was filed in the District of New Jersey on May 30, 2006 (D.N.J. No. 06-2448-KSH), captioned *Elias, et al. v. Ungar's Food Products, Inc.* and amended on August 25, 2006,.  According to Plaintiff, he first became aware of the purported basis for his allegations in the Complaint as a result of viewing the *Elias Notice of Pendency of Class Action* ("Class Notice") in a USA Today Newspaper dated February 17, 2009.  Compl. at ¶10.

The *Elias* action was certified as a nationwide class action on June 30, 2008 and remains pending in the District of New Jersey (D.N.J. No. 06-2448-KSH, Dkt. No. 70).  A copy of the Elias Class Action Notice is attached as Exhibit A hereto. The *Elias* Class consists of "All persons in the United States who purchased Dr. Praeger's Frozen California Burgers**,** Tex-Mex Veggie Burgers, Broccoli Pancakes, Potato Pancakes**,** and Spinach Pancakes from May 30, 2000

4

through August 31, 2007." *See id*.  Plaintiff is a member of the *Elias* class, as he admits to having "purchased defendant's product's [sic] stated herein in the District of Columbia."  *See* Compl. at ¶¶2, 8.  Indeed, as previously presented to this District Court in *Silvious v. Ungar's Food Products, Inc. et al.*, No. 10-639 (JDB) (D.D.C.), class counsel in the *Elias* class action has advised that, notwithstanding Silvious' assertions, he has not opted out of the class and that class counsel never received Silvious's purported opt-out notice.  A copy of the Correspondence from *Elias* Class Counsel is attached hereto as Exhibit B hereto.  Because Plaintiff failed to opt-out of the *Elias* class by the April 2, 2009 opt-out deadline, Plaintiff is a member of the *Elias* class and a party to that action.

**Plaintiff's 2010 Action**

Plaintiff's Complaint similarly recycles the complaint that he previously filed in the Superior Court of the District of Columbia on March 16, 2010, captioned *Owen F. Silvious v. Ungar's Food Products Inc., d/b/a Dr. Praeger's Sensible Foods and Sensible Foods LLC., d/b/a Dr. Praeger's Sensisble Foods*, No. 2010-CA-1795, which was removed to the District Court for the District of Columbia on April 23, 2010, D.D.C. Case No. 10-639-JDB, where it was assigned to the Honorable John D. Bates, U.S.D.J, and subsequently amended on May 1, 2010. A copy of the 2010 Complaint and Amended Complaint are attached hereto as Exhibit C.  After denying Silvious's motion for remand by Order dated June 22, 2010, on the basis that the matter had been timely and properly removed and that the court had proper jurisdiction under CAFA, the District Court dismissed the 2010 Complaint without prejudice on August 24, 2010 ("2010 Memorandum Opinion and Order").  A copy of the 2010 Memorandum Opinion and Order are attached as Exhibit D hereto.  The District Court reasoned that Silvious, as a *pro se* litigant, "could not proceed on behalf of a class" and "[u]nder those circumstances, plaintiff cannot

proceed with this case in any event, and will not be allowed to proceed here on a reconstructed complaint." Ex. D, at 3. In addition, the District Court sought to "avoid [Silvious's] duplicative litigation by deferring to another federal court" – the District of New Jersey, where the *Elias* class action has been pending for nearly five years. *See id.*

## **LEGAL STANDARD**

A court must grant a motion to dismiss under Rule 12(b)(6) for failure to state a claim unless a complaint is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, this Court cannot accept inferences "unsupported by the facts set out in the complaint [or] legal conclusions cast in the form of factual allegations." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, the allegations must be sufficient to "raise a right to relief above the speculative level" and, accepted as true, must "state a claim to relief that is plausible on its face." *Ashcroft*, 129 S. Ct. at 1949. A Rule 12(b)(1) motion addressed solely to the allegations of the complaint and challenging subject matter jurisdiction based on lack of standing is judged by essentially the same standard. *See Heard v. Johnson,* 810 A.2d 871, 877-78 (D.C. 2002). As set forth below, Plaintiff presents no allegations from which this Court could conclude that he has a viable claim or that he has suffered an injury-in-fact as a result of Defendant's alleged misrepresentations – indeed, Plaintiff concedes that he does not have any personal damages resulting from Defendant's alleged misrepresentations. Accordingly, Plaintiff's Complaint must be dismissed.

## LEGAL ARGUMENT

### I.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED

#### A.   Plaintiff Lacks Standing to Bring This Suit

Plaintiff fails to satisfy the well-established Article III requirements for standing. As stated by the United States Supreme Court:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent" not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992) (citations omitted). The D.C. Court of Appeals recently affirmed that this standing requirement under Article III is identical to that under District of Columbia law.  *See Grayson v. AT&T Corp. and Breakman v. AOL LLC*, ---A.3d---, 2011 WL 165843 at *30 and n. 36 (D.D.C. Jan. 20, 2011).  Thus, in the District of Columbia, a plaintiff's failure to satisfy even one of the three elements for constitutional standing is fatal, whether the plaintiff is in state court or federal court.  *Id*. Here, Plaintiff fails to satisfy all three elements, as set forth below.  Accordingly, Plaintiff has no standing to assert a claim under the CPPA and his Complaint must be dismissed.

#### 1.   No Injury-in-Fact

As articulated in *Lujan*, *supra*, the first element of standing requires that the plaintiff have suffered an "injury-in-fact" - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent" not "conjectural" or "hypothetical."

*Lujan*, 504 U.S. at 560.  Consistent with the above-cited law, both federal and state courts in the District of Columbia have held that "[a] plaintiff must present an actual or threatened injury-in-fact to have standing to raise his [CPPA] claims…" *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 28-29 (D.D.C. 2007); *Hakki v. Zima Co.*, 2006 WL 852126, at *2 & n. 1 (D.C. Super. Ct. Mar. 28. 2006) ("There is no indication that the [D.C] Council intended to legislate away the time-honored principles of standing as they apply to claims of individuals, whether alone or as representatives of a proposed class."), *aff'd*, 926 A.2d 722 (D.C. 2007); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177 (D.D.C. 2003) ("Standing requires individualized proof of both the fact and the extent of the injury.  The amendment to the CPPA in 2000 did not change the requirements for standing under D.C. law, despite its broad language.").

Thus, the standing requirement in the District of Columbia is identical to the Article III standing applicable in the Federal courts, such that the absence of standing in one compels the same result in the other – dismissal.  Recently, the D.C. Court of Appeals affirmed the principle that plaintiffs asserting claims under the CPPA must satisfy the standing requirements embodied in Article III of the U.S. Constitution, including the element of injury-in-fact.  *See* Grayson, 2011 WL 165843 at *14-15 (holding "that a lawsuit under the CPPA does <u>not</u> relieve a plaintiff of the requirement to show a concrete injury-in-fact to himself" and that "a person who brings a CPPA enforcement action must have suffered or must be in imminent danger of suffering an injury-in-fact.") (emphasis added).  Indeed, the Court of Appeals quoted liberally from the seminal U.S. Supreme Court case on standing, *Warth v. Seldin*, 422 U.S. 490 (1975): "The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing …' … Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large

class of other possible litigants." *Id*. at 500-01 (internal citations omitted). Similarly, "the plaintiff generally must assert its own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 499.

Despite this clear mandate, Plaintiff continues to insist that he "does not have to prove that he was actually misled, deceived or damaged," that he does not have to assert an "injury in fact" under the CPPA, and that he "does not have to prove damages under the Act". Compl. at ¶¶8-9, 14. Indeed, Plaintiff <u>concedes</u> that <u>"[i]n fact, plaintiff is not claiming any personal damages</u>. [Plaintiff] is only claiming statutory damages as authorized by the Act because defendant violated the Act." *Id*. at ¶14 (emphasis added). Thus, according to Plaintiff, a bare allegation that Defendant violated the CPPA is, alone, sufficient to receive an award of statutory damages under the CPPA, without having to satisfy any of the standing requirements. This is plainly wrong, as a matter of law. The "'injury in fact' test requires more than an injury to cognizable interest. It requires that the party seeking review be *himself* among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35, 92 S. Ct. 1361, 31 L.Ed.2d 636 (1972) (emphasis added); *accord Lujan v. Defenders of Wildlife*, 504 U.S. at 563, 112 S.Ct. 2130; *Williams*, 297 F. Supp. 2d at 177 ("Standing requires '*individualized proof*' of both the fact and the extent of the injury.") (citing *Consumer Fed'n of Am., v. Upjohn Co.*, 346 A/2d 725, 728 (D.C. 1975)) (emphasis added). Thus, it is not enough that a defendant may have violated a legal duty owed to some other consumers; a plaintiff must show that the defendant violated a legal duty owed to him. *See Williams*, *supra*, at 178. "What courts require is that injury be personal." *Id*. (internal citation omitted).

Indeed, "[t]he invasion of a purely legal right … [w]ithout a *particularized injury*" does *not* create standing to sue in this court.[1]  *Williams*, 297 F.Supp.2d at 178 (emphasis added); *Muldrow v. EMC Mortgage Corp.*, --- F.Supp.2d ---, 2011 WL 713681 at \*3 (D.D.C. March 2, 2011).  *See Jackson v. ASA Holdings, LLC*, 2010 WL 4449367, at \*6 (D.D.C. Nov. 8 2010) (granting the defendants' motion to dismiss because the plaintiff failed to demonstrate injury and thus standing under the CPPA by making 'conclusory assertions' that 'as a result of the [d]efendants' misrepresentations, she 'suffered damages, including, but not limited to the loss of her property, late fees, collection costs, and interest.' "); *Hoyte*, 489 F.Supp. 2d at 29 (holding that the plaintiff had no standing to pursue his DCCPPA claim when he alleged that the defendant failed to disclose a material fact in violation of the DCCPPA, but made no claim of injury); *Williams*, 297 F.Supp.2d at 178 (holding that plaintiffs who did not <u>personally</u> suffer any injury did not have standing to sue under the CPPA for allegedly fraudulent advertising claims") *Id*. at \*3.  "Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to <u>himself</u>, even if it is an injury shared by a large class of other possible litigants."  *Grayson*, 2011 WL 165843 at \*16 (quoting *Warth*, 422 U.S. at 500-01) (emphasis added).  Because Plaintiff denies that an injury requirement even exists, and indeed, concedes that he is not claiming any personal damages, this Court must dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.

Even if Plaintiff's admission that he suffered no damages can be disregarded, his conclusory allegations that he "was injured because he received something less than was stated

---

[1] By contrast, "[t]he invasion of a purely legal right without harm to the consumer … can be addressed through the administrative process of the Government of the District of Columbia.... Should they wish to pursue this matter, plaintiffs should avail themselves of that forum.  Without a particularized injury, absent in this case, they do not have standing to proceed in court." *Williams*, 297 F.Supp.2d at 178.

on the packages" and that "[he] has standing to bring this action against defendant…because he did suffer an injury in that he received something less than what was supposed to receive [sic] from defendant" are conjectural and fall short of the "concrete and particularized" injury in fact, required under *Lujan* and the law of the District of Columbia, as demonstrated by the cases below  Compl. at ¶13.

For example, in *Williams*, 297 F.Supp.2d 171, the District Court considered, as a matter of first impression, whether a consumer who had purchased a product that worked as advertised for him but not for others, and therefore suffered no injury, could nonetheless maintain a CPPA action.  *Id*. at 172.  The court's answer to that question was a resounding "no."  *Id*.  In that class action, the plaintiffs asserted that the drug OxyContin did not possess the advertised characteristics represented by the defendants, i.e., 12 hour pain relief and a lower abuse potential, and thus violated the CPPA.  *Id*. at 175.  Plaintiffs' asserted economic damages were based on their purchase of a product whose price was inflated due to the defendant's misrepresentations; in other words, Plaintiff sought to recover under a "benefit of the bargain" theory of recovery. *Id*. at 175-76.  However, the representative plaintiffs did not allege that OxyContin failed to provide them with effective pain relief or that they suffered any adverse consequences from their use of OxyContin. The court agreed with the defendants that absent the plaintiffs' allegations that they did not derive any benefit from the product, it must be assumed that the products provided a benefit and that the plaintiffs got what they paid for. *See id.* at 176 ("[w]ithout alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs.").  *Id*. (internal citations omitted).  As in that case, Plaintiff here has failed to allege that he did not derive any benefit from his alleged purchases of the Defendant's products.

Like the *Williams* case, in *CSPI v. Burger King Corp.*, 534 F. Supp.2d 141, 143 (D.D.C. 2008), the court held that the plaintiff CSPI did not have standing to sue Burger King for alleged violations of the CPPA based on allegations that Burger King failed to: (1) discontinue its use of products containing trans fats and (2) warn its customers that it is subjecting them to serious and unnecessary health risks is outrageous and harms the health of its customers." *Id*. at 143.  As in this case, the plaintiff failed to allege any personal or economic injury suffered by itself or its members.  *Id*.  Accordingly, the court concluded that "[s]uch generalized grievances are insufficient to establish constitutional standing for claims brought under DCCPPA."  *Id*. (internal citations omitted).

Similarly, in *Hoyte*, 489 F.Supp.2d 24, the court held that plaintiff Hoyte did not have standing to bring a CPPA claim where he failed to allege injury from consuming the defendant's food containing trans fat.  *Id*. at 28.  The plaintiff sought relief for injuries sustained as a result of KFC's use of dangerous trans fats to prepare its food items for sale to consumers in the District of Columbia.  *Id*.  The court rejected the plaintiff's allegation that he suffered "economic injuries" as insufficient, finding that the plaintiff "does not specify what 'economic injury' he has suffered, and none is evident from the facts presented, even under the most charitable reading of the complaint."  *Id*.  By comparison, Plaintiff in this action expressly concedes that be suffered <u>no personal damages</u>, economic or otherwise.

It is apparent that the reasoning articulated in the foregoing cases is equally applicable to this case.  Like the plaintiffs' allegations in *Williams* and *Hoyte*, the absence of a sufficiently pled injury in fact by Plaintiff, together with his admission that he did not, in fact, suffer any personal damages at all but is instead seeking only "statutory damages as authorized by the Act because defendant violated the Act", firmly demonstrates that Plaintiff has no standing to assert

claims under the CPPA against Defendant on behalf of himself or others.   Indeed, after

exhaustive research, Defendant can find no case where a court found standing under similar

circumstances, *i.e.*, where a plaintiff admits in his complaint that he suffered no personal

damages whatsoever.

### 2.        No Causal Connection

Plaintiff's failure to satisfy even one of the three requisite elements of standing is fatal,

and Plaintiff has already conceded that he has suffered no personal damages, and has failed to

allege an injury in fact. Accordingly, Plaintiff's Complaint should be dismissed. Even in the

unlikely event that this Court deems that Plaintiff has satisfied the injury in fact element of

standing, however, Plaintiff's Complaint still warrants dismissal because he cannot satisfy the

second element of standing, which requires a causal connection between the injury and the

conduct complained of – "the injury has to be "fairly . . . trace[able] to the challenged action of

the defendant, and not . . . th[e] result [of] the independent action of some third party not before

the court. *Lujan*, 504 U.S. at 560.

To obtain standing to sue for a violation of the CPPA, a plaintiff "must have suffered

damage *as a result of* the use or employment of an unlawful trade practice."   *Osbourne v.

Capital City Mortgage Corp.*, 667 A.2d 1321, 1330 (D.C. 1995) (emphasis added).   As an initial

matter, because Plaintiff admits that he suffered no personal damages in his Complaint, there

cannot be any causal connection – no damages *resulting from* defendant's alleged

misrepresentations.   However, even if Plaintiff had alleged personal damages, Plaintiff fails to

allege that the Defendant's alleged misconduct – the alleged misrepresentation of the fat and

caloric content of five of Defendant's products – caused any injury to Plaintiff.   In fact, while

Plaintiff discusses the amount of statutory damages that he believes should be awarded to him,

he fails to tie those damages to the Defendant's alleged misrepresentations.  Indeed, Plaintiff's allegations are bereft of any specific instance in which Defendant has caused any damage to Plaintiff.  There are no facts demonstrating any correlation between Plaintiff's claimed personal damages (admitted to be none) and Defendant's alleged misrepresentations.  Consequently, Plaintiff has no standing to pursue his CPPA claim against Defendant.  *See Lujan*, 504 U.S. at 560.

### 3.    No Redressability

The third and final element of standing is redressability – it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." As set forth above, there is no actual injury alleged in the Complaint; therefore the relief requested by Plaintiff cannot provide any real or substantial redress, for the simple reason that there is nothing to redress (as Plaintiff admits, ha has "no personal damages").  Compl. at ¶13.  As the United States Supreme Court has held, any dispute must "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937). Here, where no specific injuries are alleged, Plaintiff's request for relief is based entirely upon a hypothetical scenario, such that the action should be dismissed.

### B.    Plaintiff Fails to State a Claim

The court may dismiss a complaint under Rule 12(b)(6) where the complaint fails to allege the elements of a legally viable claim.  As set forth below, Plaintiff's Complaint fails on multiple bases.  Plaintiff alleges a violation of §28-3904(a), (d) and (e). D.C. Code §§28-3904(a), (d) and (e) provide in pertinent part:

> It shall be a violation of this chapter, whether or not any consumer
> is in fact misled, deceived or damaged thereby, for any person to:

(a)     represent that goods or services have a source, sponsorship,
        approval,    certification,    accessories,    characteristics,
        ingredients, uses, benefits, or quantities that they do not
        have;
        …

(d)     represent that the good or services are of a particular
        standard, quality, grade, style or model, if in fact  they  are
        of another;
        …

(e)     misrepresent as to a material fact which has a tendency to
        mislead;

*See* Compl. ¶7 ( "the nutritional information on the products [sic] packaging misrepresented the

fat and calories per service in violation of D.C. Code 28-3904(a), (d) and (e).").  To survive a

Rule 12(b)(6) motion to dismiss his CPPA claim, Plaintiff must allege that he suffered an injury

resulting from Defendant's misrepresentations.   As set forth above, Plaintiff has already

conceded that he suffered no personal damages.   Without an actual injury, Plaintiff cannot

possibly assert a violation of any or all of the subsections of the CPPA alleged – D.C. Code

§3904(a), (d) or (e).

Plaintiff fails to state a claim under Rule 12(b)(6) for a violation of the CPPA resulting

from Defendant's alleged misrepresentations because Plaintiff has not made any showing

through his allegations or reasonable inferences from them that the Defendant's alleged

"misrepresentations" deprived him or other consumers of the full value of the products, nor any

showing that he or any other consumer would consider the alleged misrepresentation to be

material to the decision to purchase the products. While Plaintiff alleges that Defendant's

products contained misrepresentations on the packages, Plaintiff fails to plead that he or any

other consumer was, or could have been, in any way deceived – or even reviewed – the Nutrition

Facts labels on the Defendant's products.  *See Williams*, 297 F.2d at 177.  Such failures defeat

Plaintiff's standing to bring a CPPA claim. *See id.*

### C.      As a *Pro Se* Litigant, Plaintiff Cannot Sue on Behalf of Others

Another judicially recognized basis for dismissal is that the plaintiff, as a *pro se* litigant, cannot file suit on behalf of other parties. *See* 28 U.S.C. § 1654 (2006) ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel...."); *Georgiades v. Martin-Trigona,* 729 F.2d 831, 834 (D.C.Cir.1984) (holding that a lay person cannot appear as counsel for others); *Collins v. O'Brien,* 208 F.2d 44, 45 (D.C.Cir. 1953) (*per curiam*) (same). In *Georgiades,* the District of Columbia Circuit held that a son, who was not a member of any bar, could not represent his mother in court. 729 F.2d at 834. Similarly, in *Collins,* the Circuit Court held that a lay person's ability to appear *pro se* is "reserved to the individual." 208 F.2d at 45. In addition, other courts have held that a class member cannot represent the class without counsel, because a class action suit affects the rights of the other members of the class. *See,* e.g., *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir.1975) (holding that a qualified counsel is needed to adequately represent the interest of the class). This is so because the competence of the layman is "clearly too limited to allow him to risk the rights of others." *Id.* at 1407. Thus, Silvious plainly cannot assert a class action on behalf of others, nor can he purport to opt out on the behalf of anyone else. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024-25 (9th Cir. 1998) (one cannot opt out for others.).

Indeed, this District Court previously dismissed Plaintiff's prior amended complaint in 2010 based upon, *inter alia*, this very basis:

> Moreover, even if plaintiff had opted out of the class, he cannot press claims, as he does here, on behalf of anyone else. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel. . . ."); *Georgiades v. Martin-Trigona*, 729 F.2d 831, 834 (D.C. Cir. 1984) (noting that a lay person cannot appear as counsel for others);

> *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (per
> curiam) ("Ability to protect the interests of the class depends in
> part on the quality of counsel, and we consider the competence of a
> layman representing himself to be clearly too limited to allow him
> to risk the rights of others.") (citation omitted). Plaintiff contends
> that this action is not a class action, but his allegations and demand
> for relief belie this contention.

Exh. D, at 2.  The District Court's prior decision remains just as applicable to Plaintiff's present action and consequently, must be dismissed.

### D.  Plaintiff Cannot Bring a Representative Claim Under the CPPA Without Complying With Class Action Procedures

This District Court already has once dismissed Plaintiff's virtually identical complaint to the current Complaint for bringing a putative "copycat" class action, albeit disguised as a "representative action" under the CPPA, without complying with the class action requirements of Rule 23.  Exh. D, at 2.  At that time, Judge John Bates advised Plaintiff that he could not bring an action on behalf of himself and the general public, without complying with Rule 23 because to the extent that a plaintiff asserts claims for money damages under the CPPA on behalf of third parties, as the Plaintiff does again in this case, the plaintiff must seek certification and otherwise comply with Rule 23.  *Id.  See also Margolis v. U-Haul*, No. 2007 CA 005245 B, 2009 WL 5788369, 5 (D.C. Super. Ct. Dec. 17, 2009). In fact, compliance with Rule 23's requirements is the only way to protect procedural due process rights for absent third parties.  *See id.* at 4.  Yet, as set forth below, it is apparent that Plaintiff is once again asserting an impermissible class action based on the same alleged violations of the CPPA.  Having again failed to comply with the requirements of Rule 23, Plaintiff's Complaint again must be dismissed.  *See id*; *see* Exh. D, at 2.

Although Silvious has avoided the term "class" or "class action" in his Complaint, it is apparent that Silvious is again seeking to bring his own copy-cat class action that must be held to

the same requirements of Rule 23 as any other putative class action.  Notably, not only does Silvious seek damages for himself, but he also seeks damages on behalf of other consumers. Compl. at ¶¶8, 17.  Specifically he alleges that "each time the five products were sold and delivered in the District of Columbia was a violation of the District of Columbia Consumer Protection Procedures Act," and that he should be awarded money damages for such alleged violations to other consumers.  *Id.*  Plaintiff further seeks an award of "*cy pres*" damages, in addition to a special award of 10% of the class recovery payable to him because by "bringing the action, the damage awards will benefit many individuals in the District of Columbia."  Compl. at ¶19.  Plaintiff's allegations clearly refer to alleged violations and damages of other consumers, *i.e.*, class members, as part of his Complaint ("[I]f…it is determined that defendant sold more than five packages of the products stated herein [to plaintiff] either directly or indirectly to consumers, then the amount of statutory damages that defendant might be required to pay...would [be] between $180,000.00 based on the five packages of defendants products purchased by plaintiff to many millions of dollars if defendants products were purchased by consumers in the District of Columbia…" *Id.*

As stated herein at Section III, Plaintiff cannot bring a putative class action on behalf of others, as a *pro se* litigant.  In addition, even if Plaintiff could properly assert a Rule 23 class action, he cannot possibly be considered an adequate class representative, given his lengthy history of criminal activities, which include crimes of dishonesty and fraud, not to mention that he is currently serving a federal sentence for his involvement in a mail fraud scheme and is subject to a $1.2 restitution order in connection with same.  *See United States v. Silvious*, 512 F.3d 364, 367 (7th Cir. 2008); *United States v. Silvious*, 946 F.2d 888 (4th Cir. 1991) (wire fraud

and bank fraud conviction). Accordingly, he clearly cannot adequately pursue this litigation, nor can he adequately protect the interests of others at hearings, conferences, or trial.

In order to assess the adequacy of the named representatives, courts have looked to factors such as their honesty, conscientiousness, and other affirmative personal qualities. A*rmour v. City of Anniston*, 89 F.R.D. 331, 332 D.C.Ala.1980 (finding that class representative's perjury precluded her from being an adequate class representative).  If the representative displays a lack of credibility regarding the allegations being made or a lack of knowledge or understanding concerning what the suit is about, then the court may conclude that Rule 23(a)(4) is not satisfied. *Green v. Carlson*, 653 F.2d 1022, 1022-23 (5th Cir. 1981), *cert. denied* 102 S.Ct. 484, 454 U.S. 944, 70 L.Ed.2d 254 (holding that even if the cases were arguably class actions, the court did not err in refusing to grant class status on the basis of its finding that the petitioning prisoner had engaged in a pattern of abuse of the judicial system and thus would not fairly and adequately represent the interests of the class.).

The nature of the relief sought (damages for himself and third parties, with a *cy pres* distribution of any award by the Court, with 10% set aside from the class recovery to Plaintiff for "bringing the action") clearly indicate that Plaintiff seeks to bring this action as a putative class action. Compl. ¶¶17-20). Notwithstanding Plaintiff's efforts to manipulate semantics, because the substance of the allegations and nature of the relief sought can only constitute a class action, Plaintiff's action must be brought, if at all, in accordance with the requirements of Rule 23, which is something that Plaintiff cannot do for several reasons, including that Plaintiff is clearly not an appropriate class representative and he cannot represent the interests of others as a *pro se* litigant.  Having failed to do so, Plaintiff's Complaint must be dismissed.

**E.     This Action Must be Dismissed or Stayed in Accordance
         With the First-Filed Rule**

As evident on the face of his Complaint, Plaintiff's action is merely a duplication of the

material allegations in the *Elias* action, and accordingly, his Complaint must be dismissed.   It

was only after allegedly learning of the *Elias* action that Plaintiff first filed a Complaint with

identical allegations in the District of Columbia Superior Court in 2010.   The interests of comity

and judicial economy demand nothing less than the dismissal of this action, pursuant to the

Court's inherent powers.   Indeed, the District Court has previously held that:

> [a]s between federal district courts, [] though no precise rule has
> evolved, the general principle is to avoid duplicative litigation."
> *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800,
> 817 (1976) (citations omitted); *see Nat'l Family Planning and
> Reproductive Health Ass'n v. Sullivan*, 1991 WL 345629 * 2
> (D.D.C., Oct. 5, 1992) ("This principle of judicial comity is
> derived from the policies favoring the conservation of judicial
> resources as well as providing for the comprehensive disposition
> of litigation before the federal courts.") (citations omitted).

Exh. D, at 2.   Defendant submits that the same result is *again* warranted.   *See Colorado River

Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817-18 (1976) ("as between federal district

courts, however, though no precise rule has evolved, the general principle is to avoid duplicative

litigation"); *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 626 (D.C. Cir. 1975)

("sound judicial administration counsels against separate proceedings, and the wasteful

expenditure of energy and money incidental to separate litigation of identical issues should be

avoided"); *Entines v. U.S.*, 495 F.Supp.2d 84, 85 (D.D.C. 2007) ("considerations of comity and

orderly administration of justice dictate that two courts of equal authority should not hear the

same case simultaneously"); *Hastings v. U.S. Senate*, 887 F.2d 332, 332 (D.C. Cir. 1989) ("this

circuit, like its sisters, follows the basic rule that a federal court should not hinder or encroach

upon an action concerning the same issues pending in a coordinate federal court."); *Landis v. N.*

*American Co. Same v. American Water Works & Elec. Co.*, 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket").

A district court is empowered to dismiss a federal suit whenever it is duplicative of a parallel action already pending in another federal court. *See Brinco Mining Ltd. v. Fed. Ins. Co.*, 552 F.Supp. 1233, 1242 (D.D.C. 1982) (dismissing action in favor of a pending action involving the same parties and claims based on principles of comity and a "well-founded aversion to forum shopping"). Where, as here, there are parallel cases pending in separate federal courts, "the first court in which jurisdiction attaches has priority to consider the case." *Entines*, 495 F. Supp.2d at 85; *see also Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("[f]or more than three decades the rule in this circuit has been that where two cases between the same parties on the same cause of action are commenced in two different federal courts, the one which [was] commenced first is to be allowed to proceed to its conclusion first").

While the Court has "an ample degree of discretion in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation," *Entines,* 495 F. Supp.2d at 86 (*quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)), it should consider equitable factors when applying the first-filed rule. *See Columbia Plaza*, 525 F.2d at 628-629 (weighing equitable factors such as how far each case had progressed, which case was more comprehensive as to parties and claims, and which court could resolve the claims most expeditiously).

In *Columbia Plaza*, this Court enjoined a parallel action finding that "the same issues, and apparently to a large extent the same evidence, will be considered in both actions, and two proceedings could duplicate discovery." *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d

620, 626 (D.C. Cir. 1975).  The Court took "note of crowded court dockets across the country, and the consequent desirability of deciding common issues in one tribunal rather than two."  *Id.* The Court further noted, "in addition to economic factors, the value of eliminating the risk of inconsistent adjudications and races to obtain judgments."  *Id.*

Just as in *Columbia Plaza*, if Plaintiff's instant action were allowed to go forward, it would certainly result in duplicative discovery and waste of judicial resources, and could easily result in inconsistent adjudications.  Moreover, as Plaintiff's interests are already being represented (and have been since 2006) in the first-filed and more comprehensive nationwide *Elias* action, the equitable factors discussed in *Columbia Plaza* weigh heavily in favor of dismissal.  *See Columbia Plaza*, 525 F.2d at 628-629.  Indeed, since 2006, extensive discovery has been completed and the Court has entered a final pretrial order in the *Elias* class action. (D.N.J. Dkt. No. No. 58).  Thus, there is no sound reason to permit the instant parallel action to duplicate three-plus years worth of litigation of the same claims, against the same defendants, in a more comprehensive, nationwide action where plaintiff is a member of the class.

For all of the foregoing reasons, this Court should dismiss Plaintiff's Complaint – his third flawed iteration – with prejudice.  *See Long Term Care Pharmacy Alliance v. United Health Group, Inc.*, 498 F.Supp.2d 187, 196 (D.D.C. 2007) (dismissing complaint with prejudice where plaintiff lacked standing); *Arnold v. District of Columbia*, 211 F.Supp.2d 144, 146 (D.D.C. 2002) ("conclusory averment of subject matter jurisdiction" was not enough to negate lack of standing, such that the action was dismissed with prejudice.); *Hakki*, 2006 WL 852126, at *5 & n. 8 (dismissing *with prejudice*, plaintiff's putative CPPA class action where it was not disputed that plaintiff had litigated or attempted to litigate the same claims previously against the same defendants, and where plaintiff accordingly should have anticipated the defendants'

arguments urging the court to dismiss the complaint for lack of standing and failure to state a claim.)

**II.      This Court Should Take Judicial Notice of the Attached Exhibits**

In evaluating a Rule 12(b) motion to dismiss, a court may consider certain materials outside the pleadings in accordance with Fed. R. E. 201.  *See Herbert v. Nat'l. Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).  Consideration of such materials is permissible without triggering conversion of the motion to one for summary judgment.  *See Black v. Arthur,* 18 F.Supp.2d 1127, 1131 (D.Or.1998) (courts "are allowed to take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation" without triggering the conversion requirement).  Pursuant to Federal Rule of Evidence 201 and the authorities cited below, Defendant hereby requests that this Court take judicial notice of the following materials referenced herein – pleadings previously filed in the District Courts of the District of Columbia and New Jersey, including prior litigation involving Plaintiff and Defendant:

1.      Court Directed Class Notice, *Elias et al. v. Ungar's Food Products, Inc., et al.*, Case No. 06-cv-2448-KSH (D.N.J.), Dkt. # 78, attached hereto as Exhibit A.

2.      Reply Certification of James H. Gianninoto dated July 6, 2010 with Exhibit B thereto, *Silvious v. Ungar's Food Products, Inc., et al.*, Case No. 10-cv-639-JDB (D.D.C.), Dkt. # 15-1, attached hereto as Exhibit B (referred to in the District Court's Memorandum Opinion dated August 24, 2010).

3.      Complaint dated March 16, 2010 Order, *Silvious v. Ungar's Food Products, Inc., et al.*, Case No. 10-cv-639-JDB (D.D.C.), Dkt. # 1, Exh. A, and Amended

Complaint dated May 1, 2010, *Silvious v. Ungar's Food Products, Inc., et al.*, Case No. 10-cv-639-JDB (D.D.C.), Dkt. # 19, attached hereto as Exhibit C.

4. Memorandum Opinion and Order dated August 24, 2010, *Silvious v. Ungar's Food Products, Inc., et al.*, Case No. 10-cv-639-JDB (D.D.C.), Dkt. # 26, attached hereto as Exhibit D.

A district court may take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Weinstein v. Islamic Republic of Iran*, 175 F. Supp. 2d 13, 16 (D.D.C. 2001) (quoting Rule 201 of the Federal Rules of Evidence). Furthermore, the Federal Rules of Evidence require a court to take judicial notice of a matter "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

In addition, it is well established that a court may take judicial notice of matters of public record. *Covad Comms. Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (courts may take judicial notice of matters of public record) (citing *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1228 (D.C. Cir. 1993)); *Jones v. Lieber*, 579 F. Supp. 2d 175, 177 (D.D.C. 2008) (citing *Covad*, 407 F.3d at 1222). Specifically, federal courts may take judicial notice of proceedings in other courts, both within and outside of the federal judicial system, if those proceedings have a direct relation to matters at issue. *Covad*, 407 F.3d at 1222; Jones v. Lieber, 579 F. Supp. 2d at 177. *See also Black v. Arthur,* 18 F.Supp.2d 1127, 1131 (D.Or.1998) (courts "are allowed to take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation" without triggering

the conversion requirement.; *accord Cinel v. Connick,* 15 F.3d 1338 (5th Cir.1994) (holding that the district court's consideration of a consent judgment in a previous suit did not convert the motion to dismiss to one for summary judgment).

Exhibits A and D are a Court-directed Notice and a Memorandum Opinion and Order issued by the United States District Court of the District of Columbia, Exhibit B is a Certification referenced in the District Court's August 24, 2010 Memorandum Opinion, and Exhibit C consists of pleadings filed by the Plaintiff in a prior litigation against Defendant. Thus, this Court may properly review public records including Silvious's prior 2010 lawsuit against Defendant and the other litigation involving Silvious cited by Defendant in that prior litigation and the documents offered are an appropriate subject for judicial notice pursuant to Federal Rule of Evidence 201(b)(2). For the foregoing reasons, the Court may properly consider these exhibits.

## CONCLUSION

For the reasons stated herein, the Court should grant the Defendant's Motions and dismiss the Plaintiff's claims in their entirety with prejudice.

Dated:  March 17, 2011

Respectfully submitted,

Dechert LLP

/s/ Scott M. Taggart
Scott M. Taggart
D.C. Bar ID No. 988974
1775 I Street, NW
Washington DC 20006
Tel: (202) 261-3393
Fax: (202) 261-3333
Attorneys for Defendant

Of Counsel:
SAIBER LLC
David R. Gross (not yet admitted *pro hac vice*)
James H. Gianninoto (not yet admitted *pro hac vice*)
Una Young Kang (not yet admitted *pro hac vice*)
D.C. Bar ID No. 497833
18 Columbia Turnpike
Suite 200
Florham Park, New Jersey 07932
Tel: (973) 622-3333
Fax: (973) 622-3349

## <u>CERTIFICATE OF SERVICE</u>

I, Scott M. Taggart, Esquire, hereby certify that on March 17, 2011, I caused a true and

correct copy of the foregoing Defendant's Motion to Dismiss and Motion for the Court to

Take Judicial Notice of Certain Documents, and Exhibits A through D attached thereto,

to be served on the person listed below via Federal Express:


**<u>Plaintiff</u>**
Owen F. Silvious
16497077 FCI 2 Butner
P.O. Box 1500
Butner, NC 27509


/s/ Scott M. Taggart<br>
Scott M. Taggart, Esquire
